UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

CAMSHAFT CAPITAL MANAGEMENT, LLC,

      Plaintiff,

  v.

APEX FUND SERVICES (INDIANA), INC.; and APEX FUND AND CUSTODY SERVICES, LLC,

      Defendants.

Case No: 1:24-cv-713

## COMPLAINT

Plaintiff Camshaft Capital Management, LLC ("Camshaft Management"), by and through its undersigned counsel, for its Complaint against Defendants Apex Fund Services (Indiana), Inc. ("Apex Indiana") and Apex Fund and Custody Services, LLC ("Apex F & C") (together, "Apex"), alleges as follows:

### Introduction

1. This case arises out of two contracts (the "Apex Agreements") under which Apex F & C agreed to provide administration services to Camshaft Management in relation to Camshaft Capital Fund, LP (the "Camshaft Fund").[1] Apex has breached, and will continue to breach, the Apex Agreements.

2. In violation of the strict confidentiality provisions of the Apex Agreements (which are described below), Apex has failed to protect Camshaft Management's confidential information

---

[1] Camshaft Management and Camshaft Fund will be collectively referred to below as "Camshaft."

1

and has stated that it will disclose such information imminently in response to two subpoenas issued to Apex Indiana (the "Subpoenas") without following the terms of the Apex Agreements. As a result of these clear breaches, Camshaft will suffer immediate, real, and irreparable harm because, once produced, the confidential information cannot be retrieved.

3. In addition to blatantly violating the confidentiality obligations, Apex's has breached other provisions in the Agreements. These violations have resulted in substantial, ongoing damage to Camshaft Management's business, its competitive position in the market, and its commercial relationships.

**Parties**

4. Camshaft Management is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business in Miami, Florida. William Cameron Morton, a citizen of the State of Florida, is the sole member of Camshaft Management.

5. Upon information and belief, Apex Indiana is incorporated under the laws of the State of New York with its principal place of business in Indianapolis, Indiana.

6. Upon information and belief, Apex F & C is a limited liability corporation formed in the State of Delaware with a registered office in Wilmington, Delaware.

**Jurisdiction and Venue**

7. The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). The amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, because, in addition to the irreparable harm alleged below, Camshaft Management will suffer damages in excess of $75,000. In addition, complete diversity of citizenship exists.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Apex Indiana has its principal place of business within the District and substantial parts of the acts and

omissions alleged herein (including compliance with the Subpoenas) has taken place, and will take place, in this District.

## Background[2]

### I. Apex's Obligations Under the Apex Agreements

#### A. Apex Agreement

9. On or about December 9, 2021, the Camshaft Fund, Camshaft Management and Apex Fund Services (Canada) Ltd. ("Apex Canada") entered into a contract for administration services relating to the Camshaft Fund (the "Apex Agreement"). (*See* Van Tol Decl., Ex. A.)

10. On or about April 18, 2022, the parties to the Apex Agreement agreed to the novation of Apex Canada as a party to the Apex Agreement and to substitute Apex F & C in place of Apex Canada. (*See* Van Tol Decl., Ex. B.)

11. Under the Apex Agreement, the parties expressly agreed to adhere to robust confidentiality protections for the benefit of Camshaft Management. Specifically, the parties agreed to the following provision in the Apex Agreement:

> **Unless required by law, courts, governmental agencies, regulatory authorities or self-regulatory authorities or pursuant to applicable law or with the written authority of the other party**, neither of the parties hereto shall during the term of this Agreement or thereafter disclose to any person, firm, corporation or governmental agency whatsoever any Confidential Information of the other party or information which is proprietary in nature, of which it may in the course of its duties and operations hereunder or otherwise become possessed and **each party shall use all reasonable endeavors to prevent any such disclosure as aforesaid**.

(Van Tol Decl., Ex. A at § 8.2 (emphasis added).)

12. In turn, Section 8.1 of the Apex Agreement broadly defines the materials and information entitled to protection under Section 8.2. Specifically, Section 8.1 provides that the

---

[2] The documents referred to below are attached to the accompanying Declaration of Pieter Van Tol, dated April 25, 2024 (the "Van Tol Decl."), and are incorporated into this Complaint by reference.

following materials and information constitute "Confidential Information" under the Apex Agreement:

> **Financial, investments, commercial, business, technical, operational, administrative, marketing materials, client communication materials or other information or data (including but not limited to all information about existing investments, potential investment opportunities of any kind whatsoever, clients, potential clients, Partners, suppliers, financial accounts, trade secrets, know-how, new products, business opportunities and future plans for the development of the business of the Fund**), supplied or received (whether in oral, written, magnetic, electronic, digital or any other form) by the Administrator and in any way relating to the Fund or the Administrator;
>
> **The business of the Fund, Administrator and its affiliates** (including, without limitation, presentations, articles, correspondence, reports, documents, logos, slogans, themes, layouts, presentations, artwork, computer programs, charts or related items, and the names and expertise of employees, and any and all other know-how, ideas, and other technical, business, financial, client and product development plans, forecasts, strategies, techniques and information);
>
> Computer programs, computer code, modules, scripts, algorithms, features and modes of operation, inventions (whether or not patentable), techniques, processes, schematics, testing procedures, software design and architecture, design and function specifications, analysis and performance information, user documentation, internal documentation, designs, ideas, concepts, metaphors and content for sites on the World Wide Web, the Internet and other computer networks;
>
> Copies, analyses, compilations, studies and other documents which contain or otherwise reflect or are generated from any such information; and
>
> **Any other information disclosed which is designated by the disclosing party as confidential or which is by its nature clearly confidential**.

*Id*. at § 8.1.1-8.1.5 (emphasis added).)

13.     The plain and unambiguous terms of the Apex Agreement provide that the confidentiality provisions survive the termination of the Apex Agreement.

   **B.** **The Apex Shadow NAV Agreement**

14.     On or about February 25, 2022, Camshaft Management and Apex F & C entered into the Shadow NAV Services Agreement (the "Apex Shadow NAV Agreement").  (*See* Van Tol

4

Decl., Ex. C.) As part of the Apex Shadow NAV Agreement, and as with the Apex Agreement, the parties included broad confidentiality protections.

15. Specifically, the parties agreed to the following provision:

> **Apex shall not except in exercise of its duties hereunder or required by law at any time disclose any information** relating to the affairs of the Company to any person (other than the Company or its auditors) **not authorized by the Company** to receive such information and Apex will use its **best endeavours to prevent any such disclosures** as aforesaid whether by any officers, employee or agent of itself or by anyone else.

(*Id.*, § 6 (emphasis added).)

## II. Apex's Wrongful Termination of the Apex Agreement

16. On March 7, 2024 (and without proper cause), Apex informed Camshaft that it would no longer act as the administrator for the Camshaft Fund under the Apex Agreement.

17. On or about April 1, 2024, Apex exceeded its authority by taking the unprecedented action of emailing the over forty limited partners of the Camshaft Fund the termination (the "April 1 Email"). This was done without any prior notice to Camshaft Management.

18. As alleged below, both the wrongful termination and the notice to the limited partners has resulted in Camshaft Management losing business and suffering substantial damages.

## III. Subpoenas Served by the Debtor

19. On or about April 5, 2024, in an effort to harass and intimidate Camshaft Management through a third-party fishing expedition aimed at Camshaft Management's commercially sensitive and proprietary information, BYJU's Alpha, Inc. (the "Debtor") served the Subpoenas on Apex Indiana. (*See* Van Tol Decl., Ex. H.)

20. The documents sought in the Subpoenas clearly call within the broad definition of "Confidential Information" in the Apex Agreement and the expansive provisions in the confidentiality clause in the Apex Shadow NAV Agreement described above.

### IV.  Camshaft's Communications with Apex Regarding the Subpoenas

21. On April 4, 2024, following receipt of the Debtor's notice of the Subpoenas, Camshaft Management's counsel sent a letter to Apex (the "April 4 Letter") to alert Apex to the Subpoena and to remind Apex Parties of its confidentiality obligations. (*See* Van Tol Decl., Ex. I.) In the April 4 Letter, Camshaft Management noted, among other things, that the production of documents in response to the Subpoenas could result in a breach of the terms of the valid and enforceable contracts, including the confidentiality obligations.

22. Shortly thereafter, Camshaft filed a motion in the United States Bankruptcy Court for the Southern District of Indiana seeking to quash the Subpoenas (the "Quash Motion").

23. In subsequent discussions, Apex's counsel informed counsel for Camshaft Management that Apex would await a ruling on the Quash Motion and would then interpose its own objections to the Subpoenas. However, on April 17, 2024, however, Apex reversed course and informed Camshaft Management that it would be producing documents on April 26, 2024.

24. In several follow-up communications, Apex has not changed its position. Despite the clear terms of the Apex Agreements, Apex is taking the position that the service of the Subpoenas requires disclosure, even though a subpoena itself is not a court order. Thus, Apex has made it clear that it does not intend to abide the provisions of the Agreements regarding strict confidentiality.

### COUNT I
### (Breach of the Apex Agreement)
### As to Apex F & C and Apex Indiana

25. Camshaft Management hereby incorporates and realleges Paragraphs 1 through 24 as though fully set forth herein.

26. As alleged above, Section 8.2 of the Apex Agreement imposes an obligation on Apex F & C to use "all reasonable endeavors" to prevent the disclosure of Camshaft Management's confidential and proprietary information.

27. The confidential and proprietary information sought by the Subpoenas are expressly covered and protected by Section 8.2 of the Apex Agreement.

28. Apex F & C has breached Section 8.2 by failing to use "all reasonable endeavors" to prevent the disclosure of Camshaft Management's confidential and proprietary business information, including by not using reasonable efforts to oppose the Subpoenas and instead confirming that Apex will produce Camshaft Management's confidential and proprietary business information in response to the Subpoenas. Because Apex Indiana is the recipient of the Subpoenas and would be the producing party, it is a necessary party to this claim and it is the means through which Apex F & C has breached the foregoing confidentiality obligations.

29. As a direct and proximate result of this breach of the confidentiality provisions under Section 8.2 of the Apex Agreement, Camshaft Management will suffer immediate and irreparable harm to its business operations, competitive position, reputation, and goodwill. Camshaft Management is entitled to injunctive relief for the foregoing breach.

30. Prior to the receipt of the Subpoenas, Apex F & C also breached the Apex Agreement through the wrongful termination notice and the transmission of the April 1 Email.[3]

31. As a result of the breach referenced in Paragraph 30, Camshaft has suffered, and will suffer, damages (separate from the irreparable harm incurred due to the breach of confidentiality provisions) in an amount that exceeds $75,000 and will be determined at trial.

---

[3] Camshaft Management reserves the right to amend this claim as and when it discovers further facts and/or incurs additional damages.

## COUNT II
**(Anticipatory Breach of the Apex Agreement)**
**As to Apex Indiana And Apex F & C**

32. Camshaft Management hereby incorporates and realleges Paragraphs 1 through 31 as though fully set forth herein.

33. As alleged above, Section 8.2 of the Apex Agreement imposes an obligation on Apex F & C to protect Camshaft Management's confidential and proprietary information from disclosure.

34. The confidential and proprietary information sought by the Subpoenas are expressly covered and protected by Section 8.2 of the Apex Agreement.

35. Apex F & C has confirmed that it plans to breach the terms of the Apex Agreement, including the confidentiality provisions under Section 8.2, by imminently producing Camshaft Management's confidential and proprietary information in response to the Subpoenas. Because Apex Indiana is the recipient of the Subpoenas and would be the producing party, it is a necessary party to this claim and it is the means through which Apex F & C will breach the foregoing confidentiality obligations.

36. As a direct and proximate result of the imminent and impending breach of the terms of the Apex Agreement, including the confidentiality provisions under Section 8.2, Camshaft Management will suffer immediate and irreparable harm to its business operations, competitive position, reputation, and goodwill. Camshaft Management is entitled to injunctive relief for the foregoing breach.

**COUNT III**
**(Declaratory Judgment on Apex Agreement)**
**As to Apex F & C**

37. Camshaft Management hereby incorporates and realleges Paragraphs 1 through 36 as though fully set forth herein.

38. This cause of action is asserted in addition to and in the alternative to the other causes of action herein.

39. There is an actual case and controversy between Camshaft Management and Apex F & C regarding the confidentiality provisions contained in the Apex Agreement.

40. Section 8.2 of the Apex Agreement imposes an obligation to protect Camshaft Management's confidential and proprietary information and prohibits Apex F & C from disclosing such confidential and proprietary business information.

41. Section 8.2 of the Apex Agreement also imposes an obligation on Apex F & C to use "all reasonable endeavors" to prevent the disclosure of Camshaft Management's confidential and proprietary information.

42. The Apex Agreement is a valid and enforceable contract between Camshaft Management and Apex F & C.

43. Apex F & C has breached the terms of the Apex Agreement and confirmed its intent to breach the terms of the Apex Agreement, including the confidentiality provisions in the Apex Agreement.

44. Apex F & C has repudiated the terms of the Apex Agreement by clearly communicating its intent to imminently produce Camshaft Management's confidential business and proprietary information in response to the Subpoenas.

45. Wherefore, Camshaft Management requests a judgment declaring that the Apex F & C has breached and confirmed its intent to further breach the terms of the Apex Agreement.

46. Camshaft Management, therefore, a requests preliminary and permanent injunction preventing and restraining the Apex F & C and its officers, agents, servants, employees, attorneys, and related entities, and all those in active concert or participation with it, from violating the confidentiality provisions of the Apex Agreement.

## COUNT IV
**(Breach of the Apex Shadow NAV Agreement)**
**As to Apex Indiana and Apex F & C**

47. Camshaft Management hereby incorporates and realleges Paragraphs 1 through 46 as though fully set forth herein.

48. Section 6 of the Apex Shadow NAV Agreement imposes an obligation on Apex F & C to use its "best endeavors" to prevent the disclosure of "any information" related to Camshaft Management's business affairs.

49. Apex F & C has breached Section 6 by failing to use its "best endeavors" to prevent the disclosure of Camshaft Management's business information, including by not using reasonable efforts to oppose the Subpoenas and instead confirming that Apex will produce Camshaft Management's confidential and proprietary business information in response to the Subpoenas. Because Apex Indiana is the recipient of the Subpoenas and would be the producing party, it is a necessary party to this claim and it is the means through which Apex F & C has breached the foregoing confidentiality obligations.

50. As a direct and proximate result of this breach of the confidentiality provisions of the terms of the Apex Shadow NAV Agreement, Camshaft Management will suffer immediate

and irreparable harm to its business operations, competitive position, reputation, and goodwill. Camshaft Management is entitled to injunctive relief for the foregoing breach.

## COUNT V
### (Anticipatory Breach of the Apex Shadow NAV Agreement)
### As to Apex Indiana and Apex F & C

51. Camshaft Management hereby incorporates and realleges Paragraphs 1 through 50 as though fully set forth herein.

52. Section 6 of the Apex Shadow NAV Agreement expressly prohibits Apex F & C from disclosing "any information" at any time relating to the affairs of Camshaft Management unless required by law.

53. The confidential and proprietary information sought by the Subpoena are expressly covered and protected by Section 6 of the Apex Shadow NAV Agreement.

54. Apex F & C have repudiated the terms of the Apex Shadow NAV Agreement by clearly communicating its planned intent to imminently produce Camshaft Management's confidential business and proprietary information in response to the Subpoenas. Because Apex Indiana is the recipient of the Subpoenas and would be the producing party, it is a necessary party to this claim and it is the means through which Apex F & C will breach the foregoing confidentiality obligations.

55. As a direct and proximate result of the imminent and impending breach of the terms of the Apex Shadow NAV Agreement, including the confidentiality provisions under Section 6, Camshaft Management will suffer immediate and irreparable harm to its business operations, competitive position, reputation, and goodwill. Camshaft Management is entitled to injunctive relief for the foregoing breach.

## COUNT VI
### (Declaratory Judgment on Apex Shadow NAV Agreement)
### As to Apex F & C

56. Camshaft Management hereby incorporates and realleges Paragraphs 1 through 55 as though fully set forth herein.

57. This cause of action is asserted in addition to and in the alternative to the other causes of action herein.

58. There is an actual case and controversy between Camshaft Management and Apex F & C regarding the confidentiality provisions contained in the Apex Shadow NAV Agreement.

59. Section 6 of the Apex Shadow NAV Agreement imposes an obligation to protect Camshaft Management's confidential and proprietary information and prohibits Apex F & C from disclosing such confidential and proprietary business information.

60. Section 6 of the Apex Shadow NAV Agreement also imposes an obligation on Apex F & C to use its "best endeavors" to prevent the disclosure of Camshaft Management's confidential and proprietary information.

61. The Apex Shadow NAV Agreement is a valid and enforceable contract between Camshaft Management and Apex F & C.

62. Apex F & C has breached the terms of the Apex Shadow NAV Agreement and confirmed its intent to breach the terms of the Apex Agreement, including the confidentiality provisions in the Apex Shadow NAV Agreement.

63. Apex F & C has repudiated the terms of the Apex Shadow NAV Agreement by clearly communicating its intent to imminently produce Camshaft Management's confidential business and proprietary information in response to the Subpoenas.

64. Wherefore, Camshaft Management requests a judgment declaring that the Apex F & C has breached and confirmed its intent to further breach the terms of the Apex Shadow NAV Agreement.

65. Camshaft Management, therefore, a requests preliminary and permanent injunction preventing and restraining the Apex F & C and its officers, agents, servants, employees, attorneys, and related entities, and all those in active concert or participation with it, from violating the confidentiality provisions of the Apex Shadow NAV Agreement.

## **RELIEF REQUESTED**

WHEREFORE, Camshaft Management respectfully requests that the Court enter judgment and the following relief in its favor and against Apex Parties as follows:

   i. For the claims identified above, awarding compensatory and consequential damages sustained as a result of the Apex's wrongdoing, in an amount to be proven at trial, including interest;

   ii. For the claims identified above, entering a preliminary and permanent injunction preventing and restraining the Apex Parties and their officers, agents, servants, employees, attorneys, and related entities, and all those in active concert or participation with it, from violating the confidentiality provisions of the Agreements;

   iii. Awarding attorneys' fees and costs, including expert fees; and

   iv. Awarding such other and further relief as the Court may deem just and proper.

Dated: April 25, 2024

Respectfully submitted,

*/s/ Ann McCready*
**TAFT STETTINIUS & HOLLISTER LLP**
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax:  (317) 713-3699
Ann McCready (Ind. Att'y No. 32836-53)
amccready@taftlaw.com

**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
Phone: (212) 909-0661
Fax: (212) 918-3100
Pieter Van Tol
Elizabeth Carter
Arthur Herskowitz
pieter.vantol@hoganlovells.com
elizabeth.carter@hoganlovells.com
arthur.herskowitz@hoganlovells.com

(*pro hac vice* applications forthcoming)

*Attorneys for*
*Camshaft Capital Management, LLC*