# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| CAMSHAFT CAPITAL MANAGEMENT, LLC,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>APEX FUND SERVICES (INDIANA), INC.; and APEX FUND AND CUSTODY SERVICES, LLC,<br><br>　　　　　　Defendants. | Case No: <u>1:24-cv-00713-JRS</u>-MG |

## CAMSHAFT MANAGEMENT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY <u>RESTRAINING ORDER AND PRELIMINARY INJUNCTIVE RELIEF</u>

**TAFT STETTINIUS & HOLLISTER LLP**
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax:  (317) 713-3699
Ann McCready (Ind. Att'y No. 32836-53)
amccready@taftlaw.com

**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
Phone: (212) 909-0661
Fax: (212) 918-3100
Pieter Van Tol
Elizabeth Carter
Arthur Herskowitz
pieter.vantol@hoganlovells.com
elizabeth.carter@hoganlovells.com
arthur.herskowitz@hoganlovells.com

(*pro hac vice* applications forthcoming)

*Attorneys for Camshaft Capital Management, LLC*

## <u>TABLE OF CONTENTS</u>

<b>Page</b>

PRELIMINARY STATEMENT .................................................................................................1

BACKGROUND .................................................................................................................3

    I.     The Delaware Bankruptcy and Adversary Proceeding ............................................3

    II.    Apex's Obligations Under the Apex Agreements ...................................................5

    III.   Overbroad Subpoenas Served on Apex Seeking Highly Confidential Business and Proprietary Information of Camshaft...................................................7

    IV.   Camshaft's Communications with Apex Regarding the Subpoenas ......................8

    V.    Status of Indiana Bankruptcy Action ......................................................................9

LEGAL STANDARD .........................................................................................................9

ARGUMENT ....................................................................................................................9

    I.     Apex's Imminent Production Of Camshaft Management's Confidential And Proprietary Business Information In Response To The Subpoenas Will Cause Irreparable Harm To Camshaft Management .................................................9

          A.     Apex's Disclosure Of Camshaft Management's Confidential Business And Proprietary Business Information Will Cause Irreparable Harm ....................................................................................... 11

          B.     The Imminent Disclosure of Camshaft Management's Highly Confidential Business Information Will Irreparably Harm the Goodwill and Investor Relationships Built Up by Camshaft Management Over a Period of Years....................................................... 12

    II.    Camshaft Management Is Likely To Prevail On The Merits Of Its Breach Of Contract Claim Because Apex Has Confirmed That It Will Imminently Breach the Apex Agreements ..............................................................................13

    III.   The Protection of Camshaft Management's Confidential and Proprietary Business Information From Disclosure Advances the Public Interest..................15

    IV.   The Balance of Hardships Weighs Decisively in Camshaft's Favor....................16

    V.    Camshaft Management Has Demonstrated Entitlement to a Temporary Restraining Order..................................................................................................17

CONCLUSION................................................................................................................18

i

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*A Woman's Choice-E. Side Women's Clinic v. Newman*,
  904 F. Supp. 1434 (S.D. Ind. 1995) ........................................................ 10

*Anderson Fedn of Teachers v. Rokita*
  546 F. Supp. 3d 733 (S.D. Ind. 2021) ..................................................... 16

*Barker v. Reagle*
  No. 123CV00994JMSTAB, 2023 WL 3918964 (S.D. Ind. June 9, 2023) ................................ 9

*Barnes Grp. Inc. v. Rinehart*
  No. TH 00-311-CTH, 2001 WL 301433 (S.D. Ind. Feb. 26, 2001) ................................... 10, 14

*Bonecutter v. Discover Bank*
  953 N.E.2d 1165 (Ind. Ct. App. 2011) ...................................................... 14

*Bouye v. Regal*
  No. 121CV02661JPHTAB, 2022 WL 2135025 (S.D. Ind. May 3, 2022) ............................. 10

*Brunswick Corp. v. Jones*
  784 F.2d 271 (7th Cir. 1986) .............................................................. 10

*CDW LLC v. NETech Corp.*
  722 F. Supp. 2d 1052 (S.D. Ind. 2010) ..................................................... 11

*Cook Med. Inc. v. Griffin*
  No. 1:08-CV-188SEB-JMS, 2008 WL 833159 (S.D. Ind. Mar. 27, 2008) ............................ 11

*Diginet, Inc. v. W. Union ATS, Inc.*
  958 F.2d 1388 (7th Cir. 1992) ............................................................. 10

*Frontier Corp. v. Telco Commc'ns Grp., Inc.*
  965 F. Supp. 1200 (S.D. Ind. 1997) ................................................... 15, 17

*J.P. Morgan Sec. LLC v. Weiss*
  No. 119CV04163TWPMPB, 2019 WL 6050176 (S.D. Ind. Nov. 15, 2019) ......................... 13

*Knox v. Shearing*
  637 F. App'x 226 (7th Cir. 2016) .......................................................... 9

*Korte v. Sebelius*
  735 F.3d 654 (7th Cir. 2013) .............................................................. 9

*Life Spine, Inc. v. Aegis Spine, Inc.*
   8 F.4th 531 (7th Cir. 2021) ........................................................................... 11, 12, 16

*Orr v. Shicker*
   953 F.3d 490 (7th Cir. 2020) ................................................................................ 15

*Roland Mach. Co. v. Dresser Indus., Inc.*
   749 F.2d 380 (7th Cir. 1984) ................................................................................ 14

*Sauer-Getriebe KG v. White Hydraulics, Inc.*
   715 F.2d 348 (7th Cir. 1983) ................................................................................ 15

*Storck USA, L.P. v. Farley Candy Co.*
   14 F.3d 311 (7th Cir. 1994) .................................................................................. 16

*Stuller, Inc. v. Steak N Shake Enterprises, Inc.*
   695 F.3d 676 (7th Cir. 2012) ................................................................................ 12

*Tama Plastic Indus. v. Pritchett Twine & Net Wrap, LLC*
   No. 1:11-CV-0783-JMS-DKL, 2012 WL 3264570 (S.D. Ind. Aug. 9, 2012) ......................... 16

*Vandor Grp., Inc. v. Batesville Casket Co., LLC.*
   No. 1:23-CV-00013-MPB-MG, 2023 WL 9056127 (S.D. Ind. Oct. 31, 2023) ....................... 12

**Rules**

Fed. R. Civ. P. 65 ............................................................................................... passim

**Other Authorities**

Wright & Miller, 11A Fed. Prac. & Proc. Juris. § 2948.1 (3d ed. 2002 & April 2021 Supp.) ..... 12

Plaintiffs Camshaft Capital Management, LLC ("Camshaft Management"), by and through its undersigned counsel, respectfully submits this memorandum of law, along with the Declaration of Pieter Van Tol dated April 25, 2024 (the "Van Tol Decl.") and the Declaration of William C. Morton dated April 25, 2024 (the "Morton Decl."), in support of its motion for a temporary restraining order and preliminary injunctive relief (the "Motion") pursuant to Fed. R. Civ. P. 65.[1]

## PRELIMINARY STATEMENT

The Motion follows a recent and blatant refusal by Defendants Apex Fund Services (Indiana), Inc. ("Apex Indiana") and Apex Fund and Custody Services LLC ("Apex F & C") to adhere to the strict and broad confidentiality provisions in two contracts.  The first is a contract for administration services between the Camshaft Capital Fund, LP ("Camshaft Fund"), Camshaft Management and Apex Fund Services (Canada) Ltd. ("Apex Canada") dated December 9, 2021 (the "Apex Agreement").  (*See* Van Tol Decl., **Exhibit A**.)[2]  Under the Apex Agreement, Apex F & C expressly agreed that it would not disclose the confidential information relating to Camshaft absent a <u>court order</u>, and would take "all reasonable endeavors" to prevent any such disclosures. (*See id.*, § 8.2.)   The second contract is the Shadow NAV Services Agreement between the Camshaft and Apex F & C dated February 25, 2022 (the "Apex Shadow NAV Agreement").  (*See* Van Tol Decl., **Exhibit B**.)  Under the Apex Shadow NAV Agreement, Apex F & C agreed that it would not disclose any information relating to the Camshaft Fund, unless "required by law," and would use "best endeavors to prevent any such disclosures."  (*See id.*, § 6.)

---

[1]     References below to the "Adv. Pro. Dkt." is to the docket in the Adversary Proceeding (as defined below).

[2]     Although the Apex Agreement was originally with Apex Canada, it was novated in April 2022 and Apex F & C became the relevant counterparty.  Because the subpoenas that are at issue here (the "Subpoenas") call for the production of documents from Apex Indiana, Camshaft Management has added that entity as a defendant in this case.  We will refer to Apex F & C and Apex Indiana collectively as "Apex."  We will refer to Camshaft Fund and Camshaft Management collectively as "Camshaft."

Now, in an impending breach of the Apex Agreement and the Apex Shadow NAV Agreement (the "Apex Agreements"), Apex has recently communicated that it will imminently produce—on April 26, 2024—Camshaft's highly sensitive and confidential business and proprietary information in response to the substantially overbroad Subpoenas and without a court order. Apex has also failed to make reasonable efforts to prevent such a disclosure, which is another critical clause in the Apex Agreements. The disclosure of the confidential information would result in irreparable damage to Camshaft Management's competitive position, reputation, and ability to retain existing investors and attract new ones. Apex's failure to observe its fundamental contractual obligations necessitated the filing of this request for injunctive relief.

The Court should grant Camshaft Management's request for a temporary restraining order and preliminary injunctive relief because (i) Camshaft Management is likely to prevail on the merits of its breach of contract claim against Apex given that it has already confirmed that it plans to imminently produce Camshaft Management's confidential business and proprietary information in blatant disregard of the Apex Agreements' confidentiality provisions; (ii) the imminent disclosure of Camshaft Management's confidential and competitively sensitive business information will cause actual, imminent, and irreparable harm to Camshaft Management; (iii) the protection of Camshaft Management's confidential and proprietary business information serves the public interest; and (iv) the balance of hardships weighs decisively in Camshaft Management's favor because a denial of its request for relief from this Court will result in the significant, lasting harm to Camshaft Management's business.

Accordingly, Camshaft Management requests that the Court grant its request for a temporary restraining order and preliminary injunctive relief and enjoin Apex's imminent disclosure of information.

## BACKGROUND

### I.    The Delaware Bankruptcy and Adversary Proceeding

On February 2, 2024, BYJU's Alpha, Inc. (the "Debtor") filed a petition for bankruptcy under Chapter 11 in the U.S. Bankruptcy Court for the District of Delaware (Case No. 24-bk-10140) (the "Delaware Bankruptcy") and, that same day, commenced an Adversary Proceeding (Case No. 24-ap-50013) (the "Adversary Proceeding") against Camshaft and Camshaft Capital Advisors LLC ("Camshaft Advisors") by filing a complaint (the "Complaint").  (Filed in sealed form as Adv. Pro. Dkt. No. 1, and filed redacted as No. 5.)  The Delaware Bankruptcy and Adversary Proceeding arises out of a $1.2 billion loan under a credit agreement (the "Credit Agreement"), from which predecessor management of the Debtor transferred certain funds to Camshaft Fund for investment (the "Alpha Funds").

The Complaint asserted three causes of action: (1) a claim that the Camshaft Fund was the initial transferee of actual or constructive fraudulent transfers as a result of the transfer of the Alpha Funds from Plaintiff to the Camshaft Fund (Counts I and II); and (2) a claim that Camshaft Advisors and Camshaft Management were the  transferees of a constructive fraudulent transfer as a result of the payment of investment services fees by the Debtor to Camshaft Advisors and Camshaft Management (Count III).  (Adv. Pro. Dkt. No. 1, ¶¶ 111-128.)  The Defendants (the "Camshaft Defendants") moved to dismiss the claims in the Complaint on several grounds (Adv. Pro. Dkt. No. 35), and the Debtor filed an Amended Complaint on February 28, 2024.  (*See* Van Tol Decl., **Exhibit C**.)  As to the Camshaft Defendants, the claims in the Amended Complaint are largely the same as the claims in the Complaint (with the exception of a new claim for violation of the automatic stay).

On March 13, 2024, the Camshaft Defendants renewed its motion to dismiss the Amended Complaint.  (*See* Van Tol Decl., **Exhibit D**.)  In that motion, the Camshaft Defendants presented

several meritorious defenses to the actual and constructive fraudulent transfer claims.  (*See generally id.*)  For example, the Camshaft Defendants have shown under applicable Third Circuit law that (a) it acted as a "mere conduit" of the initial transfer; and (b) the Debtor received reasonably equivalent value in exchange for the initial transfer and services provided.  (*See id.* at 12-17.)  The Bankruptcy Court has held the Camshaft Defendants' motion to dismiss in abeyance because the Debtor amended the Amended Complaint.  At an appropriate time, the Camshaft Defendants will be renewing its motion to dismiss the latest complaint on similar grounds.

In its motion filed with the U.S. District Court for the District of Delaware for a stay of the contempt order that was issued in the Delaware Bankruptcy, the Camshaft Defendants have updated the arguments on the merits on its defenses to the Adversary Proceeding.  (*See* Van Tol Decl., **Exhibit E.**)  Among other things, the Camshaft Defendants have shown that the Debtor's actual fraudulent transfer claim in the Amended Complaint is completely undermined by the admission in the first-day declaration of Timothy Pohl (who has asserted control over Debtor) that the lenders involved in the Adversary Proceeding were satisfied, as of May 2023, that the funds had not been wrongly dissipated because they were in a US-based account.  (*See id.* at 18-19.)  This contradicts the lenders' later claim—for strategic purposes and to use as a litigation ploy— that the initial transfer to the Camshaft Fund in 2022 was a fraudulent transfer.  The Camshaft Defendants also cited unrebutted evidence showing that the Debtor's constructive fraudulent conveyance claim must fail because, among other things, the value of the Alpha Funds appreciated while it was in Camshaft's custody.  (*See id.*)

In a separate motion filed on February 29, 2024, the Camshaft Defendants (as interested parties) moved to dismiss the Delaware Bankruptcy case as improperly filed.  (*See* Van Tol Decl., **Exhibit F**.)  In that motion, the Camshaft Defendants demonstrated that the Debtor did not file the

Delaware Bankruptcy for legally cognizable reasons and instead did so as a litigation tactic to avoid an adverse result in a related state court action.  (*See id.* ¶¶ 21-49.)  The Camshaft Defendants also attached evidence demonstrating that Camshaft's were independently reviewed by Deloitte.  (*See id.* ¶ 8.)  If the motion to dismiss the Delaware Bankruptcy is granted, it would mean that the related Adversary Proceeding would be dismissed as well.

## II.    Apex's Obligations Under the Apex Agreements

On March 7, 2024, Apex informed Camshaft (without legitimate cause) that it would no longer act as the administrator for the Camshaft Fund.  (*See* Van Tol Decl., **Exhibit G**.)  On April 1, 2024, Apex also exceeded its authority under the Apex Agreement by taking the unprecedented action of emailing the over forty limited partners of the Camshaft Fund regarding the termination, which was an interference with the relationship between Camshaft and its investors.  This was done without any prior notice to Camshaft.

Camshaft reserves all rights as to Apex's improper termination and its other actions, including the right to seek damages.  Also, as noted in the Morton Declaration, Apex's willingness to start sharing confidential and proprietary information is contrary to its fundamental role of protecting its hedge fund clients' interest, which is vital to its business's growth and standing, and it raises concerns that Apex has different motivations.  (*See* Morton Decl., ¶ 10.)

Apex's termination, however, did not relieve Apex of its obligations with respect to the confidentiality of Camshaft's information.  Specifically, the parties agreed to the following provision in the Apex Agreement:

**Unless required by law, courts, governmental agencies, regulatory authorities or self-regulatory authorities or pursuant to applicable law or with the written authority of the other party**, neither of the parties hereto shall **during the term of this Agreement or thereafter** disclose to any person, firm, corporation or governmental agency whatsoever any Confidential Information of the other party or information which is proprietary in nature, of which it may in the course of its duties and operations hereunder or otherwise become possessed and **each party shall use all reasonable endeavors to prevent any such disclosure as aforesaid**.

(Van Tol Decl., Exhibit. A, § 8.2 (emphasis added).)

In turn, Section 8.1 of the Apex Agreement broadly defines the materials and information constituting "Confidential Information" and they include the following:

- **Financial, investments, commercial, business, technical, operational, administrative, marketing materials, client communication materials or other information or data (including but not limited to all information about existing investments, potential investment opportunities of any kind whatsoever, clients, potential clients, Partners, suppliers, financial accounts, trade secrets, know-how, new products, business opportunities and future plans for the development of the business of the Fund**), supplied or received (whether in oral, written, magnetic, electronic, digital or any other form) by the Administrator and in any way relating to the Fund or the Administrator;

- **The business of the Fund, Administrator and its affiliates** (including, without limitation, presentations, articles, correspondence, reports, documents, logos, slogans, themes, layouts, presentations, artwork, computer programs, charts or related items, and the names and expertise of employees, and any and all other know-how, ideas, and other technical, business, financial, client and product development plans, forecasts, strategies, techniques and information);

- Computer programs, computer code, modules, scripts, algorithms, features and modes of operation, inventions (whether or not patentable), techniques, processes, schematics, testing procedures, software design and architecture, design and function specifications, analysis and performance information, user documentation, internal documentation, designs, ideas, concepts, metaphors and content for sites on the World Wide Web, the Internet and other computer networks;

- Copies, analyses, compilations, studies and other documents which contain or otherwise reflect or are generated from any such information; and

- **Any other information disclosed which is designated by the disclosing party as confidential or which is by its nature clearly confidential**.

(*See id.*, § 8.1.1-5 (emphasis added).)

The Apex Shadow NAV Agreement similarly states as follows:

Apex shall not except in [the] exercise of its duties hereunder or required by law at any time disclose any information relating to the affairs of the Company to any person (other than the [Camshaft Fund] or its auditors) not authorized by the [Camshaft Fund] to receive such information and Apex will use its best endeavors to prevent any such disclosures as aforesaid whether by any officers, employee or agent of itself or by anyone else.

(Van Tol Decl., Exhibit. B, § 6.)

As set forth in the accompanying Morton Declaration, Camshaft's information falls within several of the categories of "Confidential Information."  (Morton Decl. 7.)

### III.   Overbroad Subpoenas Served on Apex Seeking Highly Confidential Business and Proprietary Information of Camshaft

On April 4, 2024, the Debtor filed a notice of the Subpoenas, which  were served on Apex Indiana in New York, New York and two locations within this District in Indiana.  (Van Tol Decl., **Exhibit H**.)  The Camshaft Defendants have moved to quash the Subpoenas in separate actions in New York and Indiana.[3]

The document requests in the Subpoenas are identical.  They request a broad swath of documents and communications that bear no relationship to the claims and defenses at issue in the Adversary Proceeding.   The documents sought are expressly covered by the confidentiality provisions of the Apex Agreements because the Subpoenas seek confidential and commercially sensitive and proprietary information, including trade secrets, internal financial records, investor information, fund placement information, and investor strategies.  Specifically, the Subpoenas request the following information:

---

[3]      The motion to quash in Indiana is pending before the United States Bankruptcy Court for the Southern District of Indiana in a miscellaneous proceeding entitled *Camshaft et al. v. BYJU's Alpha, Inc.*, No. 1-24-mp-56003 (the "Indiana Bankruptcy Action").  The status of the motion to quash in the Indiana Bankruptcy Action is discussed below.

- Request Nos. 1 through 4 and 12 through 13 seek highly confidential information regarding the Camshaft-Apex relationship broadly, confidential and proprietary information concerning the Camshaft Funds' limited partners, and Camshaft's internal financial records. None of this highly confidential information has any nexus to the Adversary Proceeding.

- Request Nos. 5 and 6 broadly seek all documents and communications with various parties involved in the Adversary Proceeding without limiting them to the claims or defenses that are at issue in the Adversary Proceeding.

- Request Nos. 7 through 10 broadly seek proprietary information relating to Camshaft's investment funds, investor information, and investment strategies. Request Nos. 7 through 10 go well beyond the initial transfer of the Alpha Funds, which is the sole claim that the Debtor has against the Camshaft Defendants.

- Request No. 11 seeks documents regarding the termination of the Camshaft-Apex relationship, which, is not related to any claim or defense in the Adversary Proceeding.

(*See* Van Tol Decl., **Exhibit H**.)

## IV.   **Camshaft's Communications with Apex Regarding the Subpoenas**

On April 4, 2024, following the receipt of the Debtor's notice of the Subpoenas, Camshaft's counsel wrote to Apex regarding the Subpoenas and to remind Apex of its confidentiality obligations to Camshaft under the express terms of the Apex Agreement. (Van Tol Decl., **Exhibit I**.) Apex's counsel initially indicated that it would await a ruling on Camshaft's motions to quash the Subpoenas and then would interpose its own objections. However, on April 17, 2024, Apex's counsel contradicted its earlier assurance and informed Camshaft's counsel that Apex was preparing to produce documents on April 26, 2024 in response to the Subpoenas. (*See* Van Tol Decl., ¶ 12 and **Exhibit J**.) On April 18, 2024, Apex's counsel confirmed Apex's position that it was free to produce documents in the absence of a court order. (*See id.*) Thus, it is now clear that Apex does not plan to abide by its contractual obligations regarding confidentiality. Instead, Apex is taking the unsupported position that the service of a Subpoenas require disclosure, even though a subpoena cannot be construed as a "court order" under any reasonable view.

V.   **Status of Indiana Bankruptcy Action**

In the Indiana Bankruptcy Action, the court has set a hearing for April 25, 2024.  If the court in the Indiana Bankruptcy Action does not issue a ruling on April 25, Apex has made it clear that it will produce documents the next day (even in the absence of an order).

## LEGAL STANDARD

To obtain a preliminary injunction, the movant must satisfy each of the following three elements: (1) irreparable harm before the final resolution of his claims absent injunctive relief; (2) available remedies at law are inadequate; and (3) likelihood of success on the merits.  *Knox v. Shearing*, 637 F. App'x 226, 228 (7th Cir. 2016).  If the moving party makes this showing, the court then "weighs the competing harms to the parties if an injunction is granted or denied," "considers the public interest," and employs a "sliding-scale analysis" ("the greater the likelihood of success on the merits, the less heavily the balance of harms must tip in the moving party's favor").  *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013).  In this Circuit, the standard for an entry of a temporary restraining order is the same as for a preliminary injunction.  *See, e.g.*, *Barker v. Reagle*, No. 123CV00994JMSTAB, 2023 WL 3918964, at *2 (S.D. Ind. June 9, 2023) ("Courts generally apply the same equitable standards to a motion for a temporary restraining order as they do to a motion for a preliminary injunction.").

## ARGUMENT

I.   **Apex's Imminent Production Of Camshaft Management's Confidential And Proprietary Business Information In Response To The Subpoenas Will Cause Irreparable Harm To Camshaft Management**

Camshaft Management satisfies the first requirement warranting preliminary injunctive relief because the imminent disclosure of Camshaft Management's confidential and competitively sensitive business information, including proprietary information, will cause irreparable harm to Camshaft.  To satisfy the irreparable harm requirement, the moving party must demonstrate that,

absent injunctive relief, it will suffer an injury that is actual, imminent, and irreparable if a court waits until the final resolution of the claims.  *See A Woman's Choice-E. Side Women's Clinic v. Newman*, 904 F. Supp. 1434, 1466 (S.D. Ind. 1995) ("To obtain a preliminary injunction, plaintiffs must prove an imminent threat of irreparable harm."); *see also Diginet, Inc. v. W. Union ATS, Inc.*, 958 F.2d 1388, 1393 (7th Cir. 1992).  However, a showing of irreparable harm requires "more than a mere possibility of harm" when a court issues a preliminary injunction.  *Bouye v. Regal*, No. 121CV02661JPHTAB, 2022 WL 2135025, at *1 (S.D. Ind. May 3, 2022) (quoting *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020)).

Camshaft Management readily meets this requirement.  *First*, the irreparable harm faced by Camshaft Management is actual and imminent because Apex has already confirmed that it plans, on April 26, 2024, to produce Camshaft Management's confidential business information in breach of the confidentiality provisions of the Apex Agreements.  *Second*, the damage suffered by Camshaft Management resulting from disclosure of its confidential and proprietary business information cannot be undone once it occurs.  *See e.g. Brunswick Corp. v. Jones*, 784 F.2d 271, 275 (7th Cir. 1986) (potential disclosure of confidential business information to competitors would cause "irreparable losses").  Apex's imminent disclosure of Camshaft Management's confidential business and proprietary information will cause damage to Camshaft in a number of ways, including, *inter alia*, (i) damaging Camshaft Management's competitive positioning in the market through the disclosure of competitively sensitive information, including investor and investment strategy information; and (ii) destroying the commercial goodwill and investor relationships cultivated by Camshaft Management over a period of years.

**A.      Apex's Disclosure Of Camshaft Management's Confidential Business And Proprietary Business Information Will Cause Irreparable Harm**

Courts have repeatedly granted preliminary injunctive relief where the movant shows that the imminent disclosure of confidential business information would harm the movant's competitive position and its ability to obtain similar information in the future.  *See e.g.*, *CDW LLC v. NETech Corp.*, 722 F. Supp. 2d 1052, 1064 (S.D. Ind. 2010) (holding that loss of significant trade secrets and confidential information constituted irreparable harm and merited injunctive relief); *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 546 (7th Cir. 2021) (affirming preliminary injunction based in part on public's interest in the enforcement of contracts and protection of trade secrets and confidential information where confidentiality provisions were violated); *Cook Med. Inc. v. Griffin*, No. 1:08-CV-188SEB-JMS, 2008 WL 833159, at *1 (S.D. Ind. Mar. 27, 2008) (granting preliminary injunction based on finding that "money damages alone would not be sufficient to remedy the harm that could result if [Plaintiff's] goodwill is further damaged, and its confidential information continually used, by continued breach of the noncompetition agreements"); *Barnes Grp. Inc. v. Rinehart*, No. TH 00-311-CTH, 2001 WL 301433, at *22 (S.D. Ind. Feb. 26, 2001) (finding irreparable harm through "the loss of customer goodwill and the competitive advantage obtained by [Defendants] through … confidential information" and granting preliminary injunction).  Here, Apex's imminent disclosure of the information sought by the Subpoenas is certain to inflict irreparable damage to Camshaft Management's business because the disclosure of Camshaft's business and proprietary information, including information related to financial records, investors, fund placements, and investment strategies, is directly tied to Camshaft Management's competitive positioning and success in the marketplace and is protected from disclosure.  *Barnes Grp. Inc.*, 2001 WL 301433, at *22 (confidential information includes customer contacts).

At the same time, Apex's imminent disclosure of Camshaft Management's confidential and proprietary information is unnecessary given the limited claims and defenses at issue in the Adversary Proceeding. The Adversary Proceeding is concerned with a limited set of issues and funds. Yet, despite the limited issues in dispute in the Adversary Proceeding, the Subpoenas broadly seek the disclosure of confidential and proprietary information related to **all of the Camshaft Defendants' operations**. The Debtor's Subpoenas are nothing more than an aggressive litigation tactic designed to maximize leverage in the Delaware Bankruptcy by destroying Camshaft Management's business—all without the benefit of obtaining documents that are even relevant to the claims and defenses in the Adversary Proceeding.

### B. The Imminent Disclosure of Camshaft Management's Highly Confidential Business Information Will Irreparably Harm the Goodwill and Investor Relationships Built Up by Camshaft Management Over a Period of Years

It is well settled that a company's "loss of reputation, good will, and business opportunities" constitute irreparable harm justifying preliminary injunctive relief. *See e.g.*, *Life Spine*, 8 F.4th at 54621; *see also Vandor Grp., Inc. v. Batesville Casket Co., LLC.*, No. 1:23-CV-00013-MPB-MG, 2023 WL 9056127, at *2 (S.D. Ind. Oct. 31, 2023) ("providing evidence for claims of 'price erosion, loss of goodwill, damage to reputation, and loss of business opportunity' … will create 'valid grounds for finding irreparable harm'"); *Stuller, Inc. v. Steak N Shake Enterprises, Inc.*, 695 F.3d 676, 680 (7th Cir. 2012) (affirming preliminary injunction based on finding that loss of goodwill and reputation is irreparable because it is a harm "that cannot be fully rectified by the final judgment after trial") (internal quotations omitted); 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2948.1 (3d ed. 2002 & April 2021 Supp.) ("Injury to reputation or goodwill is not easily measurable in monetary terms, and so often is viewed as irreparable.").

Here, the damage that would be inflicted on Camshaft Management through the imminent disclosure of its financial and investment information is enormous.  As a regulated financial institution charged with the responsibility of safeguarding client financial information, Camshaft Management's reputation and ability to continue its investment operations would be destroyed if current and prospective investors were worried that their own confidential information was at risk of disclosure.  Unfortunately, Camshaft Management has already suffered harm as a result of Apex's blatant disregard of its contractual obligations because even the possibility of disclosure of investment strategy and investor information creates the risk that investors will seek to redeem their investments and deposits in funds managed by Camshaft.  However, in the absence of preliminary injunctive relief, Camshaft Management's business will likely be destroyed.

Further, Camshaft also lacks an adequate legal remedy: given the dynamic and relationship-driven nature of the private investment industry, it is impossible for Camshaft Management to calculate the monetary damages caused by such a broad disclosure of its critical financial and client information and, in turn, the loss of investors into its funds.  *J.P. Morgan Sec. LLC v. Weiss*, No. 119CV04163TWPMPB, 2019 WL 6050176, at \*9 (S.D. Ind. Nov. 15, 2019) (harm from "potential loss of goodwill, loss of client referrals, and loss of client confidence" cannot be addressed even through calculation and awarding of monetary damages).  Accordingly, the Court should grant Camshaft Management's request for a temporary restraining order and preliminary injunctive relief enjoining Apex from disclosing the information sought in the Subpoenas.

## II.     Camshaft Management Is Likely To Prevail On The Merits Of Its Breach Of Contract Claim Because Apex Has Confirmed That It Will Imminently Breach the Apex Agreements

Camshaft Management satisfies the third requirement for the Court to grant its request for a temporary restraining order and preliminary injunctive relief because Camshaft Management is

likely to prevail on the merits of its breach of contract claim against Apex given Apex's confirmed plans to imminently produce Camshaft Management's confidential business and proprietary information in blatant disregard of the Apex Agreements' confidentiality provisions.

To satisfy the third requirement for the granting of preliminary injunctive relief, the movant only needs to show that the movant is more likely than not to prevail on the merits of its claim. *See, e.g.*, *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 392 (7th Cir. 1984) ("[The movant] must show that it is more likely than not to win."). Here, Camshaft Management's claim is for breach of contract.[4] Under Delaware law, to state a claim for breach of contract, a party must show (1) a contractual obligation; (2) a breach of that obligation by the defendant; and (3) a resulting damage to the plaintiff. *Bonecutter v. Discover Bank*, 953 N.E.2d 1165, 1171 (Ind. Ct. App. 2011) (applying Delaware law).

*First*, it is undisputed that the Apex Agreements are enforceable contracts between Camshaft Management and Apex. Moreover, Camshaft Management performed under the Apex Apex Agreements by, *inter alia*, paying Apex for its services. *Second*, Apex already confirmed that it plans to imminently produce Camshaft Management's highly sensitive and confidential business information, including proprietary information, in blatant disregard of the Apex Agreements' confidentiality provisions. Apex's confirmation is a clear breach of the Apex Agreements, which expressly prohibit the parties from disclosing Confidential Information without a court order and also requires the parties to use "all reasonable endeavors to prevent any such disclosure" of confidential information. (Van Tol Decl., Exhibit A.) *Third*, Camshaft Management will be significantly damaged by the disclosure of its confidential and proprietary information for a variety of reasons, including by (i) the loss of bargained-for rights, including

---

[4] When the Apex Agreement was novated, the parties agreed that it would be construed under Delaware law.

rights to confidentiality, secured under the Apex Agreements; (ii) the loss of competitive positioning in the market through the disclosure of confidential business and proprietary information; and (iii) reputational damage and the loss of goodwill among Camshaft Management's business relationships whose protected information is also at risk of disclosure.

Thus, Camshaft Management is likely to prevail on the merits of its breach of contract claim against Apex. *Frontier Corp. v. Telco Commc'ns Grp., Inc.*, 965 F. Supp. 1200, 1210 (S.D. Ind. 1997) (granting preliminary injunction based on finding that movant had "shown an overwhelming likelihood of prevailing on the merits of its claims" for breach of contract where defendant had stolen and misused movant's confidential information); *see also Life Spine, Inc*, 8 F.4th at 539 (affirming district court's issuance of preliminary injunction based on finding that movant had a strong likelihood of success on its trade secret misappropriation claim and its breach of contract claims). In addition, Camshaft Management is likely to prevail on its defenses to the Adversary Proceeding and its motion to dismiss the Delaware Bankruptcy, particularly because, as explained *supra*, the Debtor improperly instituted the Delaware Bankruptcy under legally deficient theories. The shaky foundation of the proceeding in which the Subpoenas were issued provides yet another reason to grant injunctive relief here.

### III.    The Protection of Camshaft Management's Confidential and Proprietary Business Information From Disclosure Advances the Public Interest

Additionally, it would serve the public interest if the Court were to protect Camshaft Management's confidential and proprietary business information by enjoining Apex's blatant violation of the Apex Agreements. Courts regularly hold that the public interest is advanced by injunctions enforcing parties' contractual rights, including contractual rights to confidentiality. . *See Sauer-Getriebe KG v. White Hydraulics, Inc.*, 715 F.2d 348, 352 (7th Cir. 1983) (finding that the public interest would be advanced by an injunction that tends to encourage parties to abide by

their confidentiality agreements); *see also Life Spine, Inc.*, 8 F.4th at 546 (7th Cir. 2021) ("public's interest in the enforcement of contracts and protection of trade secrets and confidential information"); *Anderson Fedn of Teachers v. Rokita*, 546 F. Supp. 3d 733 (S.D. Ind. 2021) (balance of harms and public interest favored issuance of preliminary injunction preventing enforcement of new Indiana state law which would invalidate teachers' existing union dues deduction agreements).

It is significant that Apex freely and voluntarily agreed to the terms of the Apex Agreements, which included broad and robust confidentiality provisions governing the use and disclosure of the parties' confidential information. Further, Apex expressly agreed to use "all reasonable endeavors" and its "best endeavors" to prevent the disclosure of Camshaft Management's confidential information. It would be manifestly unfair for Apex to obtain all the benefits under the parties' contract while, at the same time, deliberately violating the clear terms of the parties' contracts, which expressly prohibit the disclosure of Camshaft Management's confidential information and require Apex to use "all reasonable endeavors" and "best endeavors" to prevent the disclosure of Camshaft's confidential information.

## IV.   The Balance of Hardships Weighs Decisively in Camshaft's Favor

Lastly, the Court should grant Camshaft Management's request for preliminary and permanent injunctive relief because the balance of hardships weighs decisively in its favor. When balancing the hardships, the court must consider whether the movant will suffer decidedly greater harm from an erroneous denial of an injunction than the non-moving party would suffer from an erroneous grant. *Storck USA, L.P. v. Farley Candy Co.*, 14 F.3d 311, 314 (7th Cir. 1994) ("[T]he court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently.") In other words, in balancing the hardships, courts consider which party has more to lose from an adverse decision. *See e.g.*, *Tama Plastic Indus. v. Pritchett Twine & Net Wrap, LLC*, No. 1:11-CV-0783-JMS-DKL, 2012 WL 3264570, at *11 (S.D.

Ind. Aug. 9, 2012) (finding balance of hardships weighs in favor of party who "stands to lose much more" from an adverse decision).

Here, Apex has nothing to lose from the granting of the injunctive relief sought by Camshaft Management. Apex is not a party to the Adversary Proceeding and has no interest in the litigation existing between the Debtor and the Camshaft Defendants. Indeed, Apex will likely benefit from this Court granting Camshaft Management's request for preliminary and permanent injunctive relief through savings in both time and money by not having to produce extensive documents in response to the overbroad and irrelevant document requests in the Subpoenas. By contrast, Camshaft Management has everything to lose by a denial of its request for preliminary injunctive relief. If this Court declines to grant Camshaft's request for relief, Apex will certainly disclose Camshaft Management's highly sensitive and confidential business and proprietary information, including, *inter alia*, internal financial records, investor information, fund placement information, and investor strategies. *See Frontier Corp.*, 965 F. Supp. at 1211 (the balance of hardships weighs in favor of injunctive relief to prevent further use of confidential information). The disclosure of this information will irreparably damage Camshaft Management's competitive position, built-up goodwill, and business and investor relationships developed over years. Apex should not be permitted to violate its obligations to Camshaft Management under the Apex Agreements and, in the process, destroy Camshaft Management's business.

## V.     Camshaft Management Has Demonstrated Entitlement to a Temporary Restraining Order

Camshaft Management also meets the standard for this Court to grant a temporary restraining order prohibiting Apex from producing Camshaft Management's highly confidential and proprietary business information in response to the Subpoenas. As explained *supra*, the standard for granting a temporary restraining order is the same as that of a preliminary injunction.

A temporary restraining order is amply warranted where, as here, the defendant has **admitted** that it plans to disregard its contractual obligations of confidentiality and imminently produce confidential and proprietary business information.

## CONCLUSION

For the foregoing reasons, Camshaft Management respectfully requests that the Court grant its request for a temporary restraining order and preliminary injunctive relief pursuant to Fed. R. Civ. P. 65 and enjoin Apex's disclosure of information.

*/s/ Ann McCready*
**TAFT STETTINIUS & HOLLISTER LLP**
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Tel.: (317) 713-3500
Fax:  (317) 713-3699
Ann McCready (Ind. Att'y No. 32836-53)
amccready@taftlaw.com

**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
Phone: (212) 909-0661
Fax: (212) 918-3100
Pieter Van Tol
Elizabeth Carter
Arthur Herskowitz
pieter.vantol@hoganlovells.com
elizabeth.carter@hoganlovells.com
arthur.herskowitz@hoganlovells.com

(*pro hac vice* applications forthcoming)

*Attorneys for Camshaft Capital Management, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a copy of the foregoing was filed electronically with the Court on April 25, 2024.  Service of this filing will be made on counsel for Defendants APEX FUND SERVICES (INDIANA) and APEX FUND AND CUSTODY SERVICES, LLC. by personal service on the addresses listed below:

- Apex Fund Services (Indiana), Inc.
  420 NW 5th Street
  Evansville, IN 47708

- Apex Fund Services (Indiana), Inc., c/o Corporation Service Company
  135 North Pennsylvania Street, Suite 1610
  Indianapolis, IN 46204

- Apex Fund and Custody LLC
  251 Little Falls Drive,
  Wilmington, Delaware, 19808

/s/ *Ann McCready*
Ann McCready